UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| POLYMERIC RESOURCES CORPORATION,  )<br>)<br>)   Plaintiff,   )<br>)<br>V.   )<br>)<br>POUNDS OF PLASTIC, LLC, *et al.*,   )<br>)<br>  Defendants.   ) | Civil No. 3:20-cv-00013-GFVT-EBA<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

Plaintiff Polymeric Resources Corporation alleges that Defendants Pounds of Plastic, LLC and its corporate officer Richard Pounds engaged in trademark infringement and unfair competition. [R. 1 at 10-12.] In support of its position, Polymeric argues that consumers are likely to confuse two trademarks at issue and that it is therefore entitled to declaratory judgment and a permanent injunction against both Defendants. [R. 99.] Both parties move for summary judgment. [R. 96; R. 105.] For the following reasons, Polymeric's Motion [R. 96] is **DENIED** and Defendants' Motion [R. 105] is **GRANTED**.

I

Plaintiff Polymeric Resources Corporation is a New Jersey corporation specializing in the production of engineered thermoplastics, including various nylon polymers. [R. 99 at 1.] Defendant Pounds of Plastic, LLC is a Kentucky limited liability company formed in January 2019, is the sister company of a Canadian company, Pounds of Plastic, Inc., and is alleged to be a direct competitor of Polymeric. [R. 105 at 3; Exh. 1. at 2.] Both American PoP and Canadian PoP were founded by Defendant Richard Pounds, who was employed by Polymeric between

1997 and 2006. [R. 99 at 1.] At the center of this dispute are two trademarks. The first trademark, NYLENE, is owned by Polymeric and has been used in connection with its nylon resin products for over forty years. *Id.* Polymeric indicates that a majority of its over $100 million sales each year are sold under the NYLENE mark. *Id.* The second trademark, NYLENIUM, was adopted by Canadian PoP in 2006 and is used as a descriptor for its nylon resin products. [R. 99 at 7; R. 105 at 3.]

Though Polymeric and Canadian PoP appear to have co-existed for many years, despite Canadian PoP's use of its NYLENIUM mark, this litigation began upon the formation of Canadian PoP's sister company, American PoP, and its signaled expansion into the American engineered thermoplastics market. [*See* R. 183 at 7.] American PoP has "acquired a building in Kentucky," but both parties agree that it "has yet to start business operations at the Kentucky facility," and has "made no sales of any products in the United States […] specifically, no sales under NYLENIUM." [R. 105 at 3; R. 62 at 1.] American PoP has, however, "filed an application with the USPTO (Serial No. 88605957) seeking to register" its NYLENIUM mark. [R. 1 at 8; R. 105 at 4.] As a result, Polymeric seeks a declaratory judgment and permanent injunction precluding both American PoP and Richard Pounds from using the NYLENIUM mark in the United States, arguing that use is likely to cause consumer confusion with its NYLENE trademark. [R. 1 at 10.] Further, though Polymeric did not add Canadian PoP as a Defendant in this matter, it argues that many of Canadian PoP's activities can be imputed onto American PoP. [*See* R. 177.] Both parties now seek summary judgment. [R. 96; R. 105.]

## II

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the

2

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

**A**

In its Complaint, Polymeric alleges that Defendants' use of its NYLENIUM mark constitutes trademark infringement under Section 32(1) of the Lanham Act, false designation of

origin and unfair competition under Section 43(a) of the Lanham Act, and unfair competition under Kentucky common law. [R. 1 at 10-13 (citing 15 U.S.C. §§ 1114(1), 1125(a)(1)(A)).] The Lanham Act, codified at 15 U.S.C. § 1051 *et seq.*, protects the trademark rights of businesses and individuals. *See* 15 U.S.C. § 1114. "The purpose of the trademark statutes is to protect the trademark holder's quasi-property interest in the mark and prevent consumer confusion about the actual source of goods using the mark." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.,* 703 F. Supp. 2d 671, 687 (W.D. Ky. 2010) aff'd, 679 F.3d 410 (6th Cir. 2012) (citing *Ameritech, Inc. v. American Information Technologies Corp.,* 811 F.2d 960, 964 (6th Cir. 1987)).

Section 32 of the Lanham Act provides that a person is liable for trademark infringement when he, without consent of the registrant, does "use in commerce any ... copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion . . ." 15 U.S.C.A. § 1114(1)(a). Thus, to succeed, a Plaintiff must show (1) they had a registered trademark, (2) it was used without consent and (3) its use was likely to cause confusion. *Id.* Section 43(a) of the Lanham Act creates a federal cause of action for trademark infringement claims. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992) (citing 1 J. Gilson, Trademark Protection and Practice § 2.13, p. 2-178 (1991)). That Section provides that:

> **Any person who,** on or in connection with any goods or services, or any container for goods, **uses in commerce any word, term, name, symbol,** or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, **which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods...or commercial activities**

4

>    **by another person**.... **shall be liable** in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1) (emphasis added). Assuming the Plaintiffs have a valid, registered trademark and the use is non-consensual, the test is the same under both Section 32 and 43(a): "Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?'" *Two Pesos, Inc.,* 505 U.S. at 780 (quoting *New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1201 (CA9 1979) (footnote omitted)).

Furthermore, federal trademark infringement analysis is identical to Kentucky's common law unfair competition analysis. *See Maker's Mark Distillery, Inc.*, 703 F. Supp. 2d at 688, n. 17 (citing *Winchester Federal Savings Bank v. Winchester Bank, Inc.,* 359 F.Supp.2d 561, 564 (E.D. Ky. 2004) ("Once the plaintiffs establish that the marks are valid and protectable, they must establish that the defendant's service mark is likely to cause confusion among consumers in the marketplace in order to prevail on all of the state and federal claims.") (additional citations omitted). Thus, to prove trademark infringement, false designation, and unfair competition, Polymeric must show that (1) it holds the NYLENE trademark, (2) it did not consent to Defendants' use of the NYLENIUM trademark, and (3) Defendants' use of the mark is likely to cause confusion among relevant consumers.

The vast majority of both parties' Motions for Summary Judgment is spent analyzing whether American PoP's use of the NYLENIUM mark is likely to cause confusion among relevant consumers. [*See* R. 99 at 18-30; R. 105 at 13-24 (both referencing the Sixth Circuit's eight-factor likelihood of confusion test as described in *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982)).] But, upon review, it is evident that the

Court need not analyze the *Frisch's* factors in this matter because Polymeric fails to establish that American PoP has ever "used" the NYLENIUM mark in commerce nor that the Court has extraterritorial jurisdiction over its claims against Mr. Pounds as a corporate officer of Canadian and American PoP.

1

As an initial matter, the Court concludes that American PoP has not "used" the NYLENIUM mark in commerce and that, as a result, no likelihood of confusion with NYLENE yet exists. Under the Lanham Act, "[a]ny person who**,** on or in connection with any goods or services, or any container for goods, **uses in commerce any word, term, name, symbol,** or device, or any combination thereof […]" may be deemed liable for certain trademark violations. *See* 15 U.S.C.A. § 1125(a)(1). Further, an "infringing use may be 'use of any type,'" including the sale of goods and online advertising. *See VersaTop Support Sys., LLC v. Ga. Expo. Inc.*, 921 F.3d 1364, 1369-71 (Fed. Cir. 2019) (citing S. Rep. No. 100-515, at 45 (1988)); *see also XPO CNW, Inc. v. R+L Carriers, Inc.*, 2016 U.S. Dist. LEXIS 124627, at *7 (E.D. Mich. Sep. 14, 2016) ("For the purposes of the Lanham Act, Congress has defined the term 'in commerce' to mean 'in connection with the sale, offering for sale, distribution, or advertising of any goods or services.") (citing 15 U.S.C. § 1114(1)). "Even 'extremely minimal' commercial activity, such as providing a link to a third-party website that sells goods, can trigger liability." *Id.* (citing *Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003)).

Here, both parties agree that American PoP "has yet to start business operations at the Kentucky facility," and has "made no sales of any products in the United States […] specifically, no sales under NYLENIUM." [R. 105 at 3; R. 62 at 1.] But although it cannot rely on sales to constitute use, Polymeric points to several of American PoP's alleged actions that it contends to

6

constitute "use" of its NYLENIUM mark. First, Polymeric argues that both Canadian PoP and American PoP share a website, http://www.poundsofplastic.com, on which NYLENIUM branded products are advertised. [R 177 at 9.] Polymeric argues that "[t]he shared website is operational and accessible in the United States and advertised NYLENIUM nylon resins for sale after the formation of [American PoP]." *Id.* Polymeric further contends that "[t]he two Pounds entities have continuously shared the website since [American PoP's] formation in January 2019, and three years later, still share the website." *Id.* Finally, Polymeric argues that deposition testimony made by Richard Granger, Canadian PoP's operations manager, indicates that Canadian PoP and American PoP shared http://www.poundsofplastic.com. [R. 175 at 16; R. 177 at 9.] In opposition, American PoP argues that the website is not shared between the companies, is only Canadian PoP's website, and has only ever advertised on behalf of Canadian PoP. [R. 175 at 9.]

    The Court agrees with Defendants. Use of a trademark on a web page for advertising purposes constitutes "use in commerce" under the Lanham Act. *See VersaTop Support Sys., LLC v. Ga. Expo. Inc.*, 921 F.3d at 1369-71; *see also Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 762-63 (E.D. Mich. Nov. 19, 2003) (discussing whether the keyed use of metatags on a web page constitutes "use in commerce."). But, in this matter, Polymeric provides no evidence that http://www.poundsofplastic.com advertised NYLENIUM on behalf of American PoP and not solely on behalf of Canadian PoP. As an initial matter, the two screen captures of the website provided as exhibits by Polymeric provide no indication of the website's relation to American PoP. For example, in Plaintiff's Exhibit 23, the NYLENIUM trademark on the webpage is directly followed by the descriptor "(Pounds of Plastic Inc.)," which is the business name of Canadian PoP, not American PoP (Pounds of Plastic, LLC).

7



[R. 96; Exh. 23 at 3.] Similarly, in Plaintiff's Exhibit 13, a screen capture of Canadian PoP's website lists the "Services" the company offers. [R. 96; Exh. 13.] But, at the top of the web page, "Services" is followed by the descriptor "Pounds of Plastic Inc.," with no mention of American PoP.

*Id.*; *see also* R. 185; Exh. 49 ("About Us" portion of Canadian PoP's website, with no reference to American PoP).

Further, the Court disagrees with Polymeric that Richard Granger's deposition testimony demonstrates common ownership of http://www.poundsofplastic.com. In his deposition, Mr. Granger testified that those employed by both Canadian and American PoP use the same email address extension. [R. 177-1 at 6.] He was then asked if "there's any separate website that's been set up or is currently operating for [American PoP] compared to [Canadian PoP's] website?," to which he responded "No, no. It's just the one." *Id.* Polymeric contends that these statements demonstrate that Canadian PoP and American PoP operated a shared website. [*See* R.

8

177 at 9.] But closer analysis reveals otherwise. As an initial matter, Mr. Granger is adamant that Canadian PoP and American PoP are separate entities. [*See* R. 175-16 at 3 ("I don't have [a title at American PoP] because I don't work there.").] And when questioned further about the ownership of the website, Mr. Granger is clear that only Canadian PoP has a website. *See id.* at 8 ("Q: And when you say our website, who are you referring to?" A: [Canadian PoP.]"); *see also id.* at 9 (Mr. Granger discussing the companies' "plan to make a separate website for American PoP."); *see also* R. 175-17 at 5 (Mr. Pounds discussing the "future plan" for American PoP's website).

So, despite Polymeric's contentions otherwise, the Court concludes that only Canadian PoP has advertised online using the NYLENIUM trademark. Though Polymeric argues that Mr. Granger's deposition testimony proves that Canadian PoP and American PoP share a website, review of the testimony reveals that American PoP does not yet have a website. Consequently, http://www.poundsofplastic.com only establishes non-party Canadian PoP's use of the NYLENIUM trademark. This conclusion is further evidenced by the lack of American PoP branding on Canadian PoP's website and by the testimony of both Mr. Pounds and Mr. Granger that the question of whether American PoP will share a website with Canadian PoP or have its own website has yet to be decided. [*See* R. 175-16; R. 175-17.] Accordingly, Polymeric fails to establish that American PoP has "use[d] in commerce" the NYLENIUM trademark simply because its non-party Canadian sister company has done so on its website.

**2**

Having determined that the use of the NYLENIUM trademark on Canadian PoP's website does not constitute "use in commerce" by American PoP, the Court must next determine whether emails and correspondence sent by Mr. Pounds constitutes "use" on behalf of American

9

PoP. In support of finding that American PoP has "used" the NYLENIUM trademark in commerce, Polymeric argues that "Richard Pounds has offered NYLENIUM for sale to a U.S. customer for the identical goods [as it sells]," and that he "has also fielded inquiries regarding purchasing NYLENIUM from U.S. customers." [R. 177 at 8 (referencing Exhs. 24, 39.] Polymeric also argues that a communication made between Mr. Pounds and a customer at Northfield Metal, a Canadian company, supports its contention that American PoP has used the NYLENIUM mark. [*See* R. 175 at 7-9.]

In opposition, American PoP challenges each Exhibit provided by Polymeric as evidence of "use." [R. 175 at 7-9.] First, American PoP challenges Polymeric's reference to a set of emails written by Mr. Pounds and an article published by Canadian PoP about NYLENIUM. *Id.* American PoP argues that each email does not constitute its "use" of the NYLENIUM trademark because the emails were sent years before American PoP was formed as an entity. [*See id.* (referencing Exhs. 8, 17, 18, 19, 20, 24, 25, and 39.).] Similarly, American PoP argues that the article Polymeric references was published in October 2018, months before its formation. [*See id.* (referencing Exh. 8.).] Regarding Polymeric's contention that an October 2019 email sent by Mr. Pounds to Northfield Metal, after American PoP's formation, constitutes its "use" of the trademark, American PoP argues that Northfield Metal is a Canadian company, is only a customer of Canadian PoP, and that all products sold to Northfield Metal "are sold and shipped entirely within Canada." [*See* R. 99-7; R. 175 at 7.]

Upon review, the Court agrees with American PoP that it has not "used" NYLENIUM in commerce. First, the Court finds that the actions of its Canadian sister company cannot be imputed onto it as to establish its "use in commerce" of the NYLENIUM trademark. Though it fails to make its argument clear, it is evident that Polymeric believes that all actions of Canadian

10

PoP and its corporate officer, Richard Pounds, should be imputed onto American PoP, regardless of whether the actions occurred before American PoP's formation. But Polymeric provides no legal basis for this assumption and fails to prove that Canadian PoP and American PoP should be deemed one entity despite their separate formations. Consequently, the Court is not persuaded that the actions of Canadian PoP constitute "use" on behalf of American PoP. *See*, *e.g. Stonecoat of Tex., LLC v. Procal Stone Design, LLC*, 2019 U.S. Dist. LEXIS 156005, at *153-57 (E.D. Tx. Aug. 12, 2019) (in which a district court found a Plaintiff had not "sufficiently distinguished the actions of each defendant," despite Plaintiff's argument that the actions of two sister companies were so interrelated as to be deemed "the equivalent action of the other.").

Consequently, without imputing the actions of Canadian PoP and Mr. Pounds on behalf of Canadian PoP onto American PoP, Polymeric is only left with evidence of Canadian PoP's use of the NYLENIUM trademark. For example, Polymeric prominently relies on an email and invoice from client Pier One Polymers to Richards Pounds and an email from Richard Pounds to a potential customer as evidence of American PoP's "use." [*See* R. 177 at 8 (referencing Exhs. 24, 25, 39.).] In the Pier One email, Mr. Pounds discusses NYLENIUM pricing and shipping costs with an employee of Pier One Polymers. [R. 24.] Polymeric argues this email is an example of Mr. Pounds, on behalf of American PoP, offering to sell NYLENIUM to an American customer. [R. 177 at 8.] But American PoP clarifies in response that it has no relationship with Pier One and that, even though Canadian PoP has worked with Pier One, it has only ever done by purchasing products from Pier One. [R. 175 at 8; R. 99-17 (Exh. 25) (invoice indicating that that the ordered products were "Made in the USA.").] The Court agrees that the evidence in this matter indicates that American PoP lacks a relationship with Pier One Polymers.

Polymeric's referenced email from Mr. Pounds to a potential customer at Mucho Macho

11

Inc. is likewise unpersuasive. In that email, it is Mucho Macho who references NYLENIUM, not Mr. Pounds. And though Polymeric argues that Mr. Pounds "fielded" Mucho Macho's inquiry about NYLENIUM, it fails to provide Mr. Pounds's answer to the inquiry for analysis nor explains how an inquiry which occurred three years before the formation of American PoP constitutes its "use" of the NYLENIUM trademark. Ultimately, Polymeric fails to establish that American PoP has "used" the NYLENIUM trademark in commerce. Because its arguments regarding Canadian PoP's website, correspondence from Canadian PoP, and emails sent by Mr. Pounds are unpersuasive, Polymeiric fails to establish the legal basis of any of its claims against American PoP,[1] which mandates American PoP's **DISMISSAL** from this matter.

B

Alongside its claims against American PoP, Polymeric contends that Mr. Pounds, as a corporate officer of both Canadian and American PoP, should be deemed individually liable for trademark infringement and unfair competition. [R. 177 at 9-10.] But Mr. Pounds must also be dismissed from this matter because the Court does not have extraterritorial jurisdiction over Polymeric's claims against him. *McBee v. Delica Co.*, 417 F.3d 107, 117 (1st. Cir. 2005) ("The parties characterize the extraterritoriality issue as, at least in part, one of subject matter jurisdiction under the [Lanham] Act, and it is often viewed that way.") (collecting cases)).

"A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort. This principle applies where the conduct constitutes unfair competition." *Donsco, Inc. v. Casper Corp.*, 587

---

[1] The Court further notes that, though American PoP has sought to register NYLENIUM with the USPTO, seeking registration of a mark does not constitute "use" under the Lanham Act. *See Southco, Inc. v. Fivetech., Inc.*, 611 Fed. App'x 681, 693 (Fed. Cir. 2015) ("The district court properly found that Fivetech's trademark application is not a use in commerce.").

F.2d 602, 606 (3d. Cir. 1978). "Employees of corporations are not shielded from individual liability under the Lanham Act solely because their actions were taken within the scope of their employment." *Hair Assocs v. National Hair Replacement Servs.*, 987 F. Supp. 569, 590 (W.D. Mich. Sep. 11, 1997) (quoting *Two Men & a Truck/International v. Two Men & a Truck/Kalamazoo*, 1995 U.S. Dist. LEXIS 11295, at *4 (W.D. Mich. July 24, 1995). "Put simply, a corporate officer's active participation in infringing activity is sufficient to subject him or her to joint and several liability for trademark infringement with the corporation." *Hair Assocs.*, 987 F. Supp. at 591.

But, in this matter, Mr. Pounds is a Canadian citizen and most, if not all, of his allegedly infringing conduct occurred on behalf of Canadian PoP outside of the United States. [*See* R. 1 at 1-2.] When a corporation itself is foreign, its use of a trademark is only subjected to the proscriptions of the Lanham Act if the Act's "extraterritorial reach" extends to its actions. To determine whether a Court possesses extraterritorial jurisdiction over a corporation's foreign conduct, the Court must examine three-factors: "(1) whether the defendant's conduct has a substantial effect on commerce in the United States; (2) whether the defendant is a citizen of the United States; and (3) whether there exists a conflict between defendant's trademark rights established under foreign law, and plaintiff's trademark rights established under domestic law." *Libbey Glass, Inc. v. Oneida Ltd.*, 61 F. Supp. 2d 720, 723 (N.D. Ohio Aug. 4, 1999) (citing *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 642 (2d Cir. 1956)); *see also Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 537 (6th Cir. 2013) (J. White, dissenting) (collecting cases that hold "that federal courts have jurisdiction to apply the Lanham Act extraterritorially."); *Liberty Toy Co. v. Fred Silber Co.*, 1998 U.S. App. LEXIS 14866, at *20 (6th Cir. 1998). While "the absence of one of the above factors might well be

13

determinative," "the absence of two factors is 'certainly fatal.'" *Vanity Fair*, 234 F.2d at 642-43.

While Mr. Pounds himself is a corporate officer and not a corporation, case law on the extraterritorial reach of the Lanham Act naturally extends to a jurisdictional analysis regarding the actions of a foreign corporate officer, especially considering that officers may be deemed personally liable for trademark infringement. *See, e.g., A.V. by Versace, Inc., v. Gianni Versace, S.p.A.*, 126 F. Supp. 2d 328, 336-41 (S.D.N.Y. Jan. 4, 2001) (determining whether the Court could exercise extraterritorial jurisdiction over Alfredo Versace as an individual corporate officer by analyzing the three factors expressed in *Vanity Fair*). Here, two out of the three *Vanity Fair* factors weigh against a finding that the Lanham Act reaches Mr. Pounds's conduct.

1

The first *Vanity Fair* factor weighs against a finding of extraterritorial jurisdiction because Mr. Pounds is a Canadian citizen. [R. 1 at 1-2.] Although Mr. Pounds's Canadian citizenship "weighs heavily against extraterritorial application for the Lanham Act," against his conduct, "no court has ever suggested that the foreign citizenship of a defendant is aways fatal." *Groenveld*, 730 F.3d at 537; *McBee*, 417 F.3d at 119; *see also Libbey Glass*, 61 F. Supp. at 723 ("The purpose underlying the Lanham Act . . . should not be evaded by the simple device of selecting a foreign licensee.") (internal citations omitted). This is because, "[t]o enforce the Lanham Act as Congress intended, a court must weigh each *Vanity Fair* factor against the others; the presence or absence of any one factor is not dispositive." *Id.* (collecting cases). Consequently, the Court turns to the second factor of *Vanity Fair*.

2

The limits of the second *Vanity Fair* factor, whether there is a conflict between Mr. Pounds's trademark rights in NYLENIUM under Canadian law with Polymeric's trademark

14

rights in NYLENE under domestic law, is the subject of a Circuit split. The Second Circuit has taken the position that the "conflict" factor of *Vanity Fair* is only decisive in instances where a plaintiff seeks to limit the foreign use of a trademark solely within a foreign country. *See Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 746 (2d Cir. 1994). Conversely, when a plaintiff "seeks to enjoin only those uses of [a trademark] abroad that are likely to make their way to American consumers," the Second Circuit mandates that no conflict between trademark rights is present. *See id.* ("While the stringent *Vanity Fair* test is appropriate when the plaintiff seeks an absolute bar against a corporation's use of its mark outside our borders, that test is unnecessarily demanding when the plaintiff seeks the more modest goal of limiting foreign uses that reach the United States."). The Second Circuit explains that this is because "[t]hough Congress did not intend the Lanham Act to be used as a sword to eviscerate completely a foreign corporation's foreign trademark, it did intend the Act to be used as a shield against foreign uses that have significant trademark-impairing effects upon American commerce." *Id.*

On the other hand, the Ninth Circuit requires a court to look for an actual conflict between foreign and domestic trademark law, regardless of whether the litigated use occurs solely within a foreign country. *See Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 973 (9th Cir. 2016) ("Courts typically find a conflict with foreign law or policy when there is an ongoing trademark dispute or other proceeding abroad."); *Amway Corp v. Dyson*, 1997 U.S. Dist. LEXIS 15735, at *15-*16 (W.D. Mich. Sep. 24, 1997) (finding no conflict between trademark rights under British and Michigan law.)

The Sixth Circuit has only analyzed the *Vanity Fair* factor within dissent. But its analysis appears to track the Ninth Circuit's. *See Groenveld*, 730 F.3d at 537 ("the parties agree that there is no conflict with foreign law (as Lubecore has no claim to the trade dress in Canada) and

15

thus there would be no interference with Canadian sovereignty if the Lanham Act were applied against Lubecore in Canada."). Because the Sixth Circuit has not directly addressed this factor, its weight is dependent on which Circuit's guidance is followed. Under the Second Circuit's approach, no conflict is present in this matter because Polymeric is only seeking to enjoin Mr. Pounds from using the NYLENIUM trademark within the United States. This is evidenced by Polymeric's institution of proceedings against Canadian PoP "seeking a preliminary injunction and damages for conversion and breach of contract" in Canada, and by Polymeric's choice to exclude Canadian PoP as a defendant in this matter. [R. 1 at 5.]

Conversely, under the Ninth Circuit's approach, a conflict is present because there is ongoing Canadian litigation between Polymeric, Canadian PoP, and Mr. Pounds over the use of the NYLENIUM mark. [R. 1 at 5.] Though it is undisputed that Canadian PoP does not currently "own a foreign registration for the mark NYLENIUM," Mr. Pounds contends that the Canadian Intellectual Property Office's decision to deny him trademark rights in NYLNEIUM is "non-final." [R. 186 at 9; R. 183 at 7; R. 129 at 2.] Accordingly, it appears that Mr. Pounds and Canadian PoP plan to continue to challenge the Canadian denial of its NYLENIUM registration application. *See id.* Mr. Pounds's characterization of the Canadian denial as "non-final," combined with the related Canadian litigation filed against Mr. Pounds by Polymeric, demonstrates that "an ongoing trademark dispute or other proceeding abroad" is present as to serve as a conflict between foreign and domestic law in this matter. *Compare with Trader Joe's Co.*, 835 F.3d at 973 (finding the lack of pendency of an adversarial proceeding between parties to weigh in favor of extraterritorial jurisdiction). As a result, this factor can be construed in favor of either parties' position. Consequently, the Court will turn to *Vanity Fair* factor three.

16

3

Finally, Mr. Pounds conduct has not substantially affected American commerce. "A substantial effect on commerce may exist where a defendant's activities are supported by or related to conduct in United States commerce." *Libbey Glass*, 61 F. Supp. at 723 (citing *Calvin Klein Industries, Inc. v. BFK Hong Kong, Ltd.*, 714 F. Supp. 78, 80 (S.D.N.Y. 1989)). "Effects on domestic commerce may include certain harms to a plaintiff, as a domestic corporation, such as diversion of sales or injury to reputation." *Id.* (citing *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 950-51 (S.D.N.Y. 1994)). "The substantial effects test requires that there be evidence of impacts within the United States, and these impacts must be of a sufficient character and magnitude to give the United States a reasonably strong interest in the litigation." *McBee*, 417 F.3d at 120. "The 'substantial effects' test must be applied in light of the core purposes of the Lanham Act, which are both to protect the ability of American consumers to avoid confusion and to help assure a trademark's owner that it will reap the financial and reputational rewards associated with having a desirable name or product." *Id.* (collecting cases).

In this matter, Polymeric argues that Mr. Pounds's "activities in Canada have been supported by or related to conduct in U.S. commerce, at least because NYLENIUM has been manufactured in the United States." [R. 186 at 10.] Polymeric also contends that because Mr. Pounds has "caused consumer confusion, and [] has misrepresented to customers that NYLENE is a Pounds of Plastic product," "[t]he likelihood of consumer confusion and harm to [its] reputation [is] sufficient to constitute a substantial effect on American commerce." *Id.* In opposition, Mr. Pounds argues that "Polymeric offers no evidence that its sales in the United States […] were diverted to Canadian PoP []" or that any diversion occurred because of action he took. [R. 183 at 3.] Mr. Pounds also argues that Polymeric has now "shown a loss of reputation

17

in the United States" as a result of his conduct. *Id.*

Upon review, the Court agrees with Mr. Pounds. First, Polymeric fails to prove that Mr. Pounds, as a corporate officer of Canadian PoP, caused NYLENIUM to be manufactured in the United States, nor that the domestic manufacture of NYLENIUM for later sale in Canada affects its trademark rights in the United States. Second, the Court agrees with Mr. Pounds that his email communications in which he "fields" inquiries about NYLENIUM are not enough to constitute a "substantial effect" on domestic commerce. First, many of Mr. Pounds's referenced communications either occurred in the context of Canadian PoP purchasing goods from the United States, not selling goods into the country, or occurred in the context of responding to American consumer's direct inquiries. [*See, e.g.*, R. 183 at 4-5 (referencing Exhs. 24, 39).]

In summation, Polymeric fails to show that Mr. Pounds's actions have *substantially* affected American commerce. *See Groeneveld*, 730 F.3d at 537 ("Even if [] U.S. consumers can access Lubecore's web sites and order products online, that does not prove that Lubecore's Canadian activities have a substantial effect on domestic commerce." […] The most Groeneveld has shown is the possibility that Lubecore's foreign activities might impact commerce in this country, but that is not enough to extraterritorially apply the Lanham Act.") As a result, this factor also weighs against the application of extraterritorial jurisdiction. And, with two out of the three *Vanity Fair* factors balancing against extraterritorial application, the Court finds that it lacks extraterritorial jurisdiction over Polymeric's claims against Mr. Pounds.

### III

Upon review, the Court finds the dismissal of both American PoP and Mr. Pounds warranted. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

18

1. Defendants' Motion for Summary Judgment [R. 105] is **GRANTED**;

2. Plaintiff's Motion for Summary Judgment [R. 96] is **DENIED**;

3. Because American PoP (Pounds of Plastic, LLC) has not "use[d] in commerce" the NYLENIUM trademark, it is **DISMISSED** from this matter;

4. Because the Court does not possess extraterritorial jurisdiction over Mr. Pounds, he is **DISMISSED** from this matter;

5. Because Polymeric's federal claims are dismissed, his pendent state unfair competition claim is **DISMISSED WITHOUT PREJUDICE**. *See Kerr v. Kerr*, 1992 U.S. App. LEXIS 28349, at *4 (6th Cir. 1992);

6. Plaintiff's Motion for Leave to File Sur-Reply [R. 139] is **DENIED AS MOOT**;

7. Plaintiff's Motion to Strike Jury Trial Request [R. 162] is **DENIED AS MOOT**;

8. Defendants' Motion to Strike Evidence [R. 165] is **DENIED**;

9. Parties' Motions to Seal [R. 182; R. 184] are **GRANTED**;

10. All claims and parties having been dismissed, this matter is **STRICKEN** from the Record;

11. Judgment shall be entered contemporaneously with this Order.

This the 12th day of September, 2022.

Gregory F. Van Tatenhove
United States District Judge