UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| POLYMERIC RESOURCES CORPORATION, | ) ) ) ) ) ) ) ) ) ) |
|     Plaintiff, | Case No. 3:20-cv-00013-GFVT-EBA |
| v. | **MEMORANDUM OPINION** |
| POUNDS OF PLASTIC, LLC, *et al.*, | **&** |
|     Defendants. | **ORDER** |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on a Motion for Attorneys' Fees under the Lanham Act filed by Defendant Pounds of Plastic, LLC. **[R. 193; R. 194 (redacted).]** The Act permits courts to award fees in exceptional circumstances. Pounds bases its request on several burdens imposed by Plaintiff Polymeric Resources Corporation's attempt to enforce a trademark via this lawsuit. But every litigation takes a toll on the parties. Because Pounds fails to show exceptionally problematic behavior by Polymeric, the Motion for Fees **[R. 193; R. 194]** is **DENIED** and Polymeric's related Motion for a Hearing **[R. 203]** is likewise **DENIED**.

**I**

Polymeric is a New Jersey corporation specializing in the production of engineered thermoplastics, including various nylon polymers. [R. 99 at 1.] Richard Pounds worked for Polymeric between 1997 and 2006. *Id.* Mr. Pounds founded Defendant Pounds of Plastic, a Kentucky limited liability company, in January 2019. [R. 190 at 1.] Pounds is the sister

company of a Canadian entity, Pounds of Plastic, Inc.[1]  *Id*.  Polymeric alleges that American Pounds is its direct competitor.  *Id*.

This litigation focused on two trademarks.  *Id*. at 2.  The first trademark, NYLENE, is owned by Polymeric, who used it in connection with its nylon resin products for over forty years.  *Id*.  Canadian Pounds owns the second trademark, NYLENIUM, which is also used as a descriptor for its nylon resin products.  *Id*.  Polymeric and Canadian Pounds coexisted without issue for many years.  *Id*.

The relationship soured when Polymeric viewed the founding of American Pounds as an expansion into the American thermoplastics market.  *Id*.  While American Pounds "has yet to start business operations at the Kentucky facility," and has "made no sales of any products in the United States . . . specifically, no sales under NYLENIUM," American Pounds has "filed an application with the USPTO (Serial No. 88605957) seeking to register" its NYLENIUM mark.  [R. 105 at 3–4; R. 62 at 1; R. 1 at 8.]  As a result, Polymeric filed this lawsuit seeking a declaratory judgment and permanent injunction to stop both American Pounds and Richard Pounds from using the NYLENIUM mark in the United States due to risk of market confusion.  [R. 1.]  Importantly, Canadian Pounds is not a defendant, but Polymeric argued that Canadian Pounds's activities can be imputed to American Pounds.  [R. 177.]

Polymeric's suit alleged that American Pounds's use of the NYLENIUM mark constitutes trademark infringement under Section 32(1) of the Lanham Act, false designation of origin and unfair competition under Section 43(a) of the Lanham Act, and unfair competition under Kentucky common law.  [R. 1 at 10–13 (citing 15 U.S.C. §§ 1114(1), 1125(a)(1)(A)).]  After protracted litigation, the parties filed competing motions for summary judgment.  [R. 96;

---

[1] For simplicity, this Opinion refers to Mr. Pounds and the Pounds entities collectively as Pounds.

R. 105.] The Court granted Pounds's Motion for Summary Judgment as to the federal claims, finding that American Pounds had not used the NYLENIUM trademark in commerce in the United States and that the Court did not have extraterritorial jurisdiction over Mr. Pounds regarding the Canadian company. [R. 190.] The Court also dismissed Polymeric's state claims without prejudice. *Id.*

Now, Pounds moves for attorneys' fees under the Lanham Act, alleging that Polymeric brought the lawsuit to "exact retribution for past disputes," needlessly proceeded in multiple venues (this Court and the Trademark Trial and Appeal Board (TTAB)), and "engaged in oppressive and heavy-handed litigation tactics" even though it had no viable trademark infringement claim against the Defendants. [R. 193.] Pounds requests $486,485.14. *Id.* at 22.

## II

Pounds's motion will be denied because it fails to establish entitlement to fees under the Lanham Act. Under 15 U.S.C. § 1117(a), prevailing Lanham Act defendants are entitled to an award of attorneys' fees in "exceptional" cases. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 624 (6th Cir. 1999). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

In this Circuit, "a case is not exceptional unless the infringement was malicious, fraudulent, willful, or deliberate." *Audi AG v. D'Amato*, 469 F.3d 534, 551 (6th Cir. 2006) (quoting *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004)) (internal quotations omitted). Oppressive lawsuits can satisfy this requirement. *Eagles, Ltd.*, 356 F.3d at

3

728. The Eastern District of Michigan uses a two-prong inquiry to determine whether a case is exceptional under an oppressiveness standard, which is instructive in this case. *See Int'l Techs. Consultants, Inc. v. Stewart*, No. 07-13391, 2013 U.S. Dist. LEXIS 43692, at *19 (E.D. Mich. Jan. 28, 2013). This test requires (1) "an objective inquiry into whether the suit was unfounded when it was brought and [(2)] a subjective inquiry into the plaintiff's conduct during litigation." *Id.* (citing *Eagles, Ltd.*, 356 F.3d at 728–29). In any event, the district court's decision as to whether attorneys' fees should be awarded under the Lanham Act is highly discretionary. *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019); *see also Octane*, 572 U.S. at 554 (stating that district courts "determine whether a case is exceptional in the case-by-case exercise of their discretion, considering the totality of the circumstances").

Ultimately, "recovery of attorneys' fees under the Lanham Act is 'rare.'" *Collection v. Latham Cos.*, No. 5:20-CV-217-CHB, 2022 U.S. Dist. LEXIS 71523, at *10 (E.D. Ky. Apr. 19, 2022) (citing *Octane*, 572 U.S. at 555). The award of attorneys' fees is meant to "provide protection against unfounded suits brought by trademark owners for harassment and the like." *Eagles, Ltd.*, 356 F.3d at 729 (quoting S. Rep. No. 93-1400 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7136). Thus, in many cases, "[w]here a plaintiff sues under a colorable, yet ultimately losing, argument, an award of attorney's fees is inappropriate." *Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 625.

Pounds identifies several disputes that it believes show malicious conduct by Polymeric. It then argues that the totality of the circumstances merits an award of fees. But none of the individual issues goes beyond the pale of ordinary litigation. The Court considers each in turn.

4

**A**

First, Pounds argues that, in light of the concurrent proceeding before TTAB, Polymeric merely harassed Pounds by also filing a Complaint in federal court raising the same allegations. [R. 193 at 5.] Pounds believes that Polymeric's eventual choice to suspend the TTAB action proves that Polymeric solely filed a duplicate action in order to intimidate them. *Id.* It argues that "[c]onducting parallel proceedings despite having no evidence to support its claims" demonstrates that Polymeric's motivation was to "harass the Defendants and not redress harm." *Id.* at 21. Apparently, the outcome of the TTAB action could have invalidated Pounds's NYLENIUM application and made the instant lawsuit unnecessary. *Id.* at 6.

Pounds offers no support for its proposition that a TTAB action is a "parallel proceeding" or would constitute duplicative litigation. A Missouri district court declined to treat a TTAB proceeding as a "parallel proceeding" for purposes of exercising jurisdiction over a Plaintiff's complaint seeking declaratory relief when the Complaint sought relief that could not be offered by the TTAB proceeding. *O'Reilly Auto. Stores, Inc. v. Bearing Techs.*, No. 16-3102-CV-S-BP, 2018 U.S. Dist. LEXIS 175853, at *14 (W.D. Mo. Oct. 12, 2018). A Texas district court reached a similar conclusion, explaining its rationale in a footnote. *Young v. Vannerson*, 612 F. Supp. 2d 829, 837 n.2 (S.D. Tex. 2009) ("When, as here, a parallel administrative proceeding is pending, courts have consistently declined to defer to the TTAB when additional claims are raised that cannot be resolved by the agency."). Similarly, here, Polymeric's Complaint did not solely seek to invalidate the NYLENIUM application. It also raised claims of unfair competition under Kentucky common law, which would not have been remedied in the TTAB proceeding.

Further, a party who does not file a Notice of Opposition to a trademark application waives their opposition, so filing the Notice with the TTAB was also Polymeric's attempt to

5

preserve its administrative rights.[2] [R. 197 at 9.] Polymeric sought to suspend the TTAB proceeding pending the outcome of this litigation to reduce costs, but Pounds opposed the motion, which resulted in briefing before the TTAB. *Id.* at 8. Therefore, Pounds's own actions undermine its argument that the dual filings constitute harassment or intimidation.

**B**

Next, Pounds makes two, related arguments about a joint stipulation the parties entered to resolve a discovery dispute. [R. 193 at 16.] The complaint stated that one of Polymeric's customers believed that Pounds's product, NYLENIUM, was associated with Polymeric. *Id.* at 5. Eventually, Polymeric stipulated "that it shall not use the oral or written testimony of this customer in this proceeding for any purpose." [R. 64 at 2.]

Pounds first contends that the stipulation proves that Polymeric alleged actual confusion in bad faith. [R. 193 at 16.] As Pounds puts it, "Polymeric continued to pursue its litigation despite stipulating to the lack of actual confusion." *Id.* at 16.

Despite Pounds's characterization, the stipulation did not admit that there was no actual confusion. The stipulation solely relates to the purported confusion pled in the Complaint, as to a single customer. [*See* R. 64 at 2.] The stipulation, made over a year after the initiation of the lawsuit, is not indicative of a lack of pre-suit investigation by Polymeric or that Polymeric lied that it had evidence of actual confusion. Polymeric merely agreed to discard the customer's

---

[2] "Any person who believes that he or she would be damaged by the registration of a mark on the Principal Register may oppose registration by filing a notice of opposition with the Board, and paying the required fee, within thirty days after the date of publication, or within an extension period granted by the Board for filing an opposition." Trademark Manual of Examining Procedure § 1503.01 (July 2022) (citing 15 U.S.C. § 1063; 37 C.F.R. §§ 2.101–2.107; TBMP § 303). "An opposition must be filed within thirty days after the date of publication in the Trademark Official Gazette, or within an extension period granted by the Board . . . . The time within which to file an opposition is set by statute and may not be extended or waived." *Id.* § 1503.03 (citing *In re Kabushiki Kaisha Hitachi Seisakusho*, 33 USPQ 2d 1477 (Comm'r Pats. 1994); *In re Cooper*, 209 USPQ 670 (Comm'r Pats. 1980); TBMP §306.04).

testimony as a compromise to resolve a discovery dispute.  *See id.*  Pounds's argument that the stipulation somehow shows Polymeric knew its claims were baseless has no merit.

Second, Pounds alleges that Polymeric eventually violated the Customer Stipulation.  [R. 193 at 7.]  Polymeric's president, Sol Schlesinger, stated in a declaration in support of Polymeric's Motion for Summary Judgment that:

> Polymeric was made aware of Richard Pounds' use of the name "Nylenium" by one of our customers who was led by Richard Pounds to believe that NYLENIUM originated from or was affiliated with Polymeric.

[R. 99-1 ¶ 30.]

This paragraph does not violate the stipulation.  It provides context for how Polymeric's president came to learn of Pounds's use of the NYLENIUM mark.  Neither the declaration, nor the motion it supports, relies upon the written or oral testimony of any customer.  Polymeric's motion solely references documents produced in discovery to make the argument that customers were confused about the relationship between NYLENE, NYLENIUM, and Pounds of Plastic.  If Polymeric had stipulated to not discuss actual confusion at all, it would have virtually surrendered the validity its claim.  The spirit and letter of the stipulation do not indicate that the Schlesinger declaration was improper.[3]  Thus, this argument does not merit an award of attorneys' fees under the Lanham Act.

## C

Pounds also believes that Polymeric violated another stipulation.  [R. 193 at 7.]  Pounds argues that Polymeric violated its agreement to not seek monetary damages, which states:

> Based on Defendants' representations that Defendants (or non-party Pounds of Plastic, Inc. or non-party Elizabeth Pounds, who holds no ownership interest in Pounds of Plastic, LLC or Pounds of Plastic, Inc. and strongly objects to her

---

[3] When discussing entering into a stipulation before Magistrate Judge Atkins, Pounds's counsel stated, "I guess if we're going to resolve this, the resolution is a stipulation from Polymeric that the [customer] witness will not be called to testify in any manner in the case." [R. 39 at 30–31.]

inclusion) have not made any sales of goods in connection with the NYLENIUM mark in the United States, Polymeric stipulates that it will not seek any monetary damages in this lawsuit for its Lanham Act claims and other claims alleged in its Complaint.

[R. 64 at 1–2.] Pounds complains that Mr. Schlesinger, in his declaration in support of summary judgment, discussed sales data. [R. 193 at 7.]

Mr. Schlesinger's statement does not violate the stipulation. Polymeric purely stipulated that it relinquished its right to seek monetary damages. In its Motion for Summary Judgment, Polymeric explicitly stated that it sought a permanent injunction prohibiting Defendants' future use of the NYLENIUM mark. [R. 99 at 8.] In a footnote, it even reminded that Court that "Plaintiff is not seeking monetary damages for Defendants' use of the NYLENIUM mark . . . ." *Id.* at 8 n.4. Polymeric also did not use sales data at all to support the arguments set forth in its motion, going so far as to state that monetary damages would not remedy its alleged harms. Pounds fails to show that Polymeric violated the stipulation, much less that Polymeric proceeded in bad faith in a manner meriting an award of attorneys' fees under the Lanham Act.

**D**

Next, Pounds argues that Polymeric violated Fed. R. Evid. 408 when it pleaded details relating to pre-suit settlement discussions. [R. 193 at 5.] Paragraphs 54–60 of the Complaint detail a cease-and-desist letter that Polymeric sent Pounds, demanding they cease use of the NYLENIUM designation. [R. 1 at 9–10.] In response to the letter, counsel "acknowledged the likelihood of confusion" between the marks and indicated that Pounds would stop using "NYLENIUM" and abandon their trademark. *Id.* ¶¶ 54–55. But then, Pounds retained new counsel and stated that they did not agree to cease using NYLENIUM or abandon their application for a trademark. *Id.* ¶ 58. They did offer, however, to change the spelling to "NYLEN**N**IUM." *Id.* ¶ 59.

8

Pounds's reliance on Rule 408 is misplaced, as the rule governs the admissibility of evidence of settlement negotiations for purposes of trial, not the appropriateness of referencing such negotiations in a pleading. *See* Fed. R. Evid. 1101 ("These rules apply to *proceedings* . . . .") (emphasis added). Even if Rule 408 did apply, the paragraphs could arguably be permitted for another purpose, such as to show Pounds was aware of possible confusion between the NYLENE and NYLENIUM marks, rather than to show liability. *See* Fed. R. Evid. 408(b). In any event, Pounds never pursued this as an issue during the course of litigation.[4] The proper course would have been to move to strike the paragraphs, but Pounds did not choose to do so—probably because they would have been unsuccessful. *See Jewell v. Shelby Cnty./ Gov't*, No. 13-2048-STA-dkv, 2013 U.S. Dist. LEXIS 134755, 2013 WL 5306102, at *8 (W.D. Tenn. Sept. 20, 2013) ("Rule 408 is a rule of evidence governing admissibility, not a rule of pleading.").

Even assuming Pounds's Rule 408 argument held water, it does not show malicious litigation conduct by Polymeric. If this portion of the complaint was so problematic, Pounds could have raised it as early as the pleading phase. It did not. Nor does it now give the Court any reason to regard a common evidentiary issue as an exceptional circumstance meriting an award of attorneys' fees.

E

Pounds's next attempt to show malicious conduct by Polymeric asserts that Polymeric harassed Mr. Pounds's wife, Elizabeth Pounds, for no reason. [R. 193 at 8.] Pounds argues that Polymeric refused to enter into the Damages Stipulation unless Mrs. Pounds also signed the stipulation. *Id.* Mrs. Pounds was not a defendant in this case. Pounds contends that, when discussing the stipulation before Magistrate Judge Atkins, Polymeric agreed that the stipulation

---

[4] Pounds did request redaction of the paragraphs in the Parties' Report of their Rule 26(f) Planning Conference. [R. 29 at 4.] But Pounds never filed a motion to strike or otherwise submitted the matter for resolution.

9

would only bind the defendants. *See id.* However, the transcript of the call shows no evidence of this alleged limitation, and the Defendants' citation to the transcript does not track with their claim, either. *See id.* (citing "(Doc. 39, p. 18:25)").

Polymeric explains that Mrs. Pounds is not just Mr. Pounds wife, but an active Pounds employee who may engage in the sale of Pounds's products. [R. 197 at 16.] Thus, Polymeric claims it was "taking reasonable precautions" to include Mrs. Pounds "before waiving its right to pursue monetary damages." *Id.* It also points out that the parties entered into this stipulation before any depositions had occurred. *Id.* Polymeric claims it never contacted, communicated with, or burdened Mrs. Pounds in any way, and that she was not forced to sign the stipulation. *Id.* Thus, Polymeric strongly objects to Defendants' characterization of its conduct as "harassment" and asks Defendants to retract the accusation. *Id.* at 16–17.

Pounds's argument that Polymeric harassed Mrs. Pounds has no basis in fact. Polymeric provided its terms and conditions for entering into a stipulation, and it was Pounds and Mrs. Pounds's choice to enter into the stipulation. There is no evidence that she was harassed, so this argument fails to merit an award of fees.

### F

Pounds claims that Polymeric's discovery conduct was aggressive and improper because it sought extensive discovery from Canadian Pounds, which is not a party to this litigation. [R. 193 at 8.] In essence, the argument is (1) Polymeric took discovery related to Canadian Pounds's business that was not relevant; (2) Polymeric did not discover any evidence to support its claims; and (3) Polymeric did not prevail on summary judgment. *See id.* For these reasons, Pounds believes the Court should award attorneys' fees under the Lanham Act. *See id.*

Instructive here, the second prong of the oppressiveness inquiry espoused by the Eastern District of Michigan requires "a subjective inquiry into the plaintiff's conduct during litigation"—specifically, whether the plaintiff's conduct rose to the level of "harassment." *Int'l Techs. Consultants, Inc.*, 2013 U.S. Dist. LEXIS 43692, at *19–20. A plaintiff's conduct might be subjectively oppressive if its conduct "unreasonably increased the cost of defending the suit." *Eagles, Ltd.*, 356 F.3d at 729 (quoting *S Indus. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001)). It may also be oppressive if the conduct was "unusually vexatious." *Id.* (quoting *Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1147 (10th Cir. 2000)).

First, as Polymeric points out, two of its motions to compel discovery related to Canadian Pounds succeeded and were "[e]ndorsed by the Court." [R. 197 at 17.] In fact, in the second order granting the motion to compel, the Court also sanctioned Pounds for failing to comply with a previous Order relating to the same discovery. [*See* R. 88.] As the record reveals, it was Pounds who protracted discovery and unreasonably caused an increase in the cost of litigating this matter. *See, e.g., id.* Further, just because Polymeric did not obtain the discovery it was hoping to find does not mean that the requests were facially unreasonable or vexatious. Nor does Polymeric's loss on summary judgment compel an award of attorneys' fees. Colorable, but ultimately unsuccessful, arguments are not malicious enough to deserve an award of fees. *See Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 625. Pounds's discovery complaints do not entitle them to an award of fees under the Lanham Act.

## G

Next, Pounds argues that Polymeric engaged in bad faith settlement negotiation tactics throughout the lawsuit. [R. 193 at 10.] For instance, they claim that Polymeric proposed a

settlement in part based on building a "business relationship," but never actually considered that option. *Id.* As evidence of Polymeric's bad faith, Pounds states that Polymeric "refused to provide details on this proposed business relationship, including economic terms." *Id.* Pounds claims that Polymeric's counsel called their attorney "bizarre" for even attempting to learn the terms of the proposed settlement, specifically the financial details. *Id.* at 10–11. Conversely, Polymeric recalls Pounds failing to substantively respond to any of its settlement proposals until one week before the court-ordered Settlement Conference, which was three months after Polymeric's first settlement proposal. [R. 197 at 17.]

Again, the record favors Polymeric's recollection. In emails between the parties, Polymeric offered to appoint Mr. Pounds as its distributor and to terminate the Canadian lawsuit in exchange for Pounds ceasing to use the NYLENIUM mark. [R. 193-1 at 38.] Polymeric's counsel clearly communicated that, before letting settlement discussions continue, they wanted Pounds to agree in principle to the terms. *Id.* at 34. Polymeric's counsel conveyed that, when they reached an agreement in principle, the parties could meet to work out the terms of the agreement. *Id.* at 30. Polymeric never indicated that Pounds would be bound to settle if they ultimately could not agree on financial or business terms.

Neither party is happy with how the other engaged in settlement negotiations. But dissatisfaction does not imply bad faith negotiations or show that Polymeric acted particularly vexatiously. Thus, Pounds is not entitled to attorneys' fees under the Lanham Act on this basis.

## H

Pounds also alleges that Polymeric's CFO, Arthur Quint, testified that personal animus against Pounds played a part in Polymeric's decision to file this lawsuit. [R. 193 at 11.] If true, of course, this could bear significant weight on the first prong of the oppressiveness analysis—

12

the objective inquiry into whether the lawsuit was unfounded when it was brought. *See Int'l Techs. Consultants, Inc.*, 2013 U.S. Dist. LEXIS 43692, at *19. But the cited testimony does not show that Mr. Quint "admitted" to a personal animus. Quint's testimony, in relevant part, was:

> Q: . . . Is it fair to say that Polymeric's history with Mr. Pounds played a role in your—your perception of the potential for confusion between Nylene and Nylenium?
>
> A: I think—I think so.
>
> Q: So not so much based on what the products associated with the Nylenium mark may or may not be, but more so with Mr. Pounds himself?
>
> [Counsel objects to question and then instructs Quint to answer]
>
> A: Yeah. Well, so I think you're leading me towards a conclusion that I—that I'm not willing to make. The knowledge that I have of the relationship that Mr. Pounds had with the company is directly related to the products that he sold, the customers that he sold them to, and in the industries that he sold them to. It's directly related to his knowledge of—of our product line and the name Nylene that we used. And you know, to—to go ahead and—and register this name when he's not connected to us anymore, but, you know, is—is setting out to continue the operations of his company, you know, that's—that's why I've come to the conclusion that I've come to personally.

[R. 105-4 at 21–22.] At best, this testimony shows that Polymeric's suspicions regarding NYLENIUM's potential to confuse customers stemmed from Mr. Pounds's time with the company. But it does not show a personal animus or that the animus motivated this litigation.

Pounds also points to Mr. Schlesinger's, Polymeric's President's, testimony that he had no knowledge of the products Pounds made or intended to make. [R. 193 at 12.] It is unclear how this demonstrates much of anything when Polymeric's claims were based on alleged confusion between two trademarks for plastic resin, NYLENE and NYLENIUM, and not the specific products manufactured under those trademarks. Pounds offers no evidence that Polymeric filed this lawsuit out of revenge. And, as discussed, Polymeric's claims were colorable at the time the suit was brought, meaning it was not objectively unfounded. *See Int'l*

13

*Techs. Consultants, Inc.*, 2013 U.S. Dist. LEXIS 43692, at *19.  On this basis, this case is not exceptional so as to merit an award of attorneys' fees under the Lanham Act.

## I

Finally, Pounds perfunctorily claims that their victory on summary judgment, which resulted in a dismissal of all the claims, entitles them to attorneys' fees.  [R. 193 at 12.]  This argument is remarkably unencumbered by citation to caselaw or other authority.  *See id.*  And for good reason.  As a matter of law, the bare fact that Polymeric lost the litigation does not entitle Pounds to fees under the Lanham Act.  *See Am. Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 625 ("[w]here a plaintiff sues under a colorable, yet ultimately losing, argument, an award of attorney's fees is inappropriate.").

## J

One final item remains.  Polymeric requests oral argument on the motion "to address any issues or outstanding questions" the Court may have related to Pounds's briefing, which Polymeric claims is "replete with false and erroneous information."  [R. 203.]  Polymeric had an opportunity to clear up any issues on the record.  [*See* R. 196.]  And if it is truly concerned that Pounds's briefing is "replete with false and erroneous information," it has tools at its disposal to seek redress.  *See, e.g.*, Fed. R. Civ. P. 11.  A hearing will not assist the Court at this juncture.

## III

Pounds argues that, under the totality of the circumstances, the above bases collectively make this case "exceptional."  [R. 193 at 22.]  Some of Pounds's claims are hyperbolic, and all of them are meritless.  In this case, the sum is not better than its parts.  Pounds has simply failed to show any meaningful basis to award fees under the Lanham Act.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motion for Attorneys' Fees **[R. 193; R. 194]** is **DENIED**; and

2. The Plaintiffs' Motion for a Hearing **[R. 203]** is **DENIED**.

This the 20th day of September, 2023.

Gregory F. Van Tatenhove
United States District Judge